1   Michael S. Traylor  (SBN 136814)
    9018 Balboa Blvd., Suite 352
2   Northridge, CA. 91325
    (310) 401-6610 ph
3   (661) 296-9965 fax
    Attorney for Plaintiff Henry Haraway



# THE UNITED STATES DISTRICTY COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DISTRICT

| | |
|---|---|
| HENRY HARAWAY<br><br>             Plaintiff<br><br>vs.<br><br><br><br>E! ENTERTAINMENT TELEVISION, LLC, E! ENTERTAINMENT INTERNATIONAL HOLDINGS, INC., NBC UNIVERSAL MEDIA, LLC (formerly known as NBC Universal, Inc.), NBCUNIVERSAL TELEVISION GROUP, NIGEL LYTHGOE PRODUCTIONS, WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC.  AND DOES 1-20 INCLUSIVE<br><br>             Defendants. | Case No.<br>**CV13-00628**FMO(MRWx)<br><br>**COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF** |

     Plaintiff Henry Haraway along with his heirs, successors and common interest holders ("Plaintiffs") are informed and believe (and on the basis of that information and belief) complain and allege as follows:

1

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a United States citizen and a lawful resident of the County of Los Angeles, State of California.

2. Plaintiff is the creator, sole owner and copyright holder in the title "Opening Act" for use as the title for a talent-based television program (the "Title"). Plaintiff created the Title for its specific use in or about 2003 and filed registration with the United States Copyright Officer therefor. On October 17, 2003, the Title was registered as part of a series of "Reality Shows by Henry Haraway" and was assigned Registration Number TXu1-131-025. Plaintiff is also the creator, sole owner and copyright holder in the fixated work entitled "Opening Act" which is a talent-based television program (the "Program"). Plaintiff created the Program for its specific use in or about 2003 and filed registration with the United States Copyright Officer therefor. On October 17, 2003, the Program was registered as part of a series of "Reality Shows by Henry Haraway" and was assigned Registration Number TXu1-131-025. Attached hereto as Exhibit 1 and incorporated herein by this reference is a true and correct copy of such registration.

3. Defendant E! Entertainment Television, LLC is a Limited Liability Company organized and existing under the laws of the State of Delaware which operates the television network commonly known as "E! Entertainment" (including the networks known as E! Networks). Defendant E! Entertainment International Holdings, Inc. is a corporation existing under the laws of the State of Delaware which is the holding company for (and of) Defendant E! Entertainment Television, LLC. These two (2) entities are collectively referred to herein as "E! Entertainment".

4. Defendants NBC Universal Media, LLC (formerly known as NBC Universal, Inc.) is a limited liability corporation organized and existing under the laws of the State of Delaware (hereinafter "NBC") which owns, funds and operates a number of television networks (including co-defendant E! Entertainment). NBCUniversal Television Group is a subsidiary of and NBC.

5. Defendant Nigel Lythgoe Productions ("NLP") is an entity of unknown type which is the operating entity of producer Nigel Lythgoe.

6. Defendant William Morris Endeavor Entertainment, LLC ("William Morris") is a talent agency and limited liability company organized and existing under the laws of the State of California.

7. On or about December 10, 2003, Plaintiff entered into a written agreement with E! Entertainment in connection with the Title and the Program. A true and correct copy of that agreement is attached hereto and incorporated herein as Exhibit 2; pursuant to which E! Entertainment agreed to refrain from using the Works without entering into an agreement with Plaintiff which compensated Plaintiff for such use. Thereafter, Plaintiff entered into a subsequent written agreement with E! Entertainment which was in the same form as Exhibit 3 hereto, pursuant to which E! Entertainment again agreed to refrain from using the Works without entering into an agreement with Plaintiff which compensated Plaintiff for such use. Said agreement also provided that E! Entertainment would not present the Works to a third party without acknowledging that Plaintiff was the owner of the Works. Furthermore, Plaintiff entered into a simultaneous verbal agreement with E! Entertainment wherein E! Entertainment agreed that they would consider Plaintiff's Program and Title (collectively the "Works") for use as a television program and that E! Entertainment would not proceed with a television program derived from the Works unless Plaintiff and E! Entertainment came to an agreement on terms and compensation for Plaintiff for such use.

8. Prior to the foregoing agreements with E! Entertainment (collectively the "E! Agreements"), Plaintiff entered into a written agreement with William Morris. Said agreement (the "WMA Agreement") was in the same format as Exhibit 3 and indicated that WMA would not use the Works without entering into an agreement with Plaintiff which compensated Plaintiff for such use. In that agreement (the "WMA Agreement"), WMA also agreed that they would not present the Works to a third party without acknowledging that Plaintiff was the owner of the Works.

9. In reliance upon the verbal representations made by E! Entertainment to Plaintiff (which were entirely consistent with the E! Agreements) and in reliance upon the E! Agreements themselves; Plaintiff submitted the Works to E! Entertainment for purposes of negotiating an agreement with E! Entertainment for compensation, development, broadcast, revenue-generating

and profit-sharing associated with the Works. Likewise, in reliance upon the verbal representations made by WMA to Plaintiff (which were entirely consistent with the WMA Agreement) and in reliance upon the WMA Agreements; Plaintiff submitted the Works to WMA for purposes of negotiating an agreement with WMA and its affiliates, partners, joint-venturers and other parties with whom WMA regularly conducted business (including Defendants NLP, E! Entertainment and NBC).

       10. Defendants and each of them were fully knowledgeable and/or made aware of the foregoing dynamics and that the Works were the sole property of Plaintiff. Defendants became desirous of creating a television show which was based upon the Works and utilized the Works in devising a television show in approximately 2012 called, ironically, "Opening Act". Defendants and each of them knowingly and intentionally conspired to breach the E! Agreements and the WMA Agreement and furthermore to use the Works to create an on-air, television series entitled Opening Act for broadcast and exhibition on E! Entertainment and NBC's networks (the "Infringing Series"). In furtherance thereof, Defendants (and each of them) did actually copy the Title and the Program and create the Infringing Series which is distributed by E! Entertainment and NBC on-air and online. As part of the process of creating the Infringing Series (and in an effort to conceal their intentional infringement thereof) Defendants (and each of them) also made a derivative work from the Program and added elements of that derivative work to create the Infringing Series. Defendants went on to produce and air the Infringing Series and earn monies and goodwill (along with other benefits) therefrom. Each defendant also further conspired not to pay Owner and/or to permit Owner to obtain other benefits by being associated with and/or involved in the creation of the Infringing Series. Defendants elected to retain all such income and other benefits for themselves and have benefitted tremendously from their actions which are not only prohibited by the terms of the Agreements; but which are violative of Plaintiff's copyrights in the Works. The uses of the Works by Defendants as the central creative elements of the Infringing Series insure that there is no marketplace for the Title and/or the Program.

11. This Complaint arises under the federal Copyright Act, 17 U.S.C.§ 101 et seq., as amended, and the statutory and common law of State of California. This Court has subject-matter jurisdiction over this dispute under 28 U.S.C $ 1331 (federal question) because the claims asserted arise under the Copyright Act. The Court also has subject matter jurisdiction under 28 U.S.C § 1367(a) (supplemental jurisdiction) over the supplemental state-law claims.

12. Venue is proper in this judicial district under 28 U.C.S §1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this District. Venue is also proper under 28 U.S.C. § 1391(b)(1) because Defendants are subject to personal jurisdiction in this District and therefore "reside" in this District as term is defined in 28 U.S.C. § 1391(c). In addition, each Defendant conducts a substantial amount of business in this District.

13. The true capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as DOES 1 to 20, inclusive, are unknown to and Plaintiff therefore sues such DOE defendants by such fictitious names. When their true names and capacities are ascertained, Plaintiff will amend the Complaint by asserting their true names and capacities herein. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner from the occurrences alleged in this Complaint, and that Plaintiff's damages as alleged in this Complaint were proximately caused by such fictitious defendants.

14. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants was acting as an agent, servant, employee, representative of or joint venture with the other Defendants, each acting under the direction and control of said co-defendants and within the course and scope of such agency, service, employment, or joint venture. At all times mentioned herein the acts of Defendants, and each of them, were authorized and ratified by their co-defendants.

## FIRST CAUSE OF ACTION AGAINST EACH DEFENDANT
## FOR COPYRIGHT INGRINGEMENT

15.  Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 14 above, as if fully set for the herein.

16.  The Works (including  the Title, the Program and each element each thereof) and the rendering of ideas and elements therein, constitutes copyrightable expression protected by the federal Copyright Act, 17 U.S.C. § 101, et seq.

17.  Plaintiff is the sole and exclusive owner of all of the exclusive rights to reproduce the Title and the Program in copies, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work, and display the copyrighted work publicly.

18.  Defendants (and each of them) had access to the Works and gained such access by obtaining actual copies of the Works from Plaintiff.  Defendants then shared those copies of the Works among each other.

19.  The Infringing Series and the various elements and episodes thereof contain the same plot, themes, mood, setting, pace, characters, sequence of events, and other concrete elements making up the Works and therefore is substantially and strikingly similar to the Works. The Infringing Series also contains, copies and derives from the Works an identical framework for a so-called "reality show" which by its nature contains limited opportunities for responses and "ad-libs" by actors and others making appearances on the show to that framework.   However the framework is the essence of the show and creates the so-called "reality" segments which are designed, limited spawned and nurtured by that framework.

20.  Defendants have copied and intend to continue copying the Works and the expressions contained therein in order to make and continue to make the Infringing Series, without Plaintiff's license, authority, or consent.

21.     Plaintiff is informed and believes, and on that basis alleges, that Defendants copied the Works prior to exhibition and distribution of the Infringing Series by creating a series outline, series bible, and other infringing materials in connection with the Infringing Series.  These items were used in the creation of the Infringing Series and the Infringing Series was derived therefrom.

22. Defendants have distributed (and intend to continue to distribute) copyrighted elements of the Works and the expressions contained therein in the form of the Infringing Series to the public and to display the copyrighted Works publicly without Plaintiff's license, authority, or consent.

23. By engaging in the conduct described above, Defendants have committed and continue to commit copyright infringement under the federal Copyright Act, 17 U.S.C. §§101 et seq.

24. Defendants' copying of the Works without Plaintiff's license, authority, or consent and in violation of the E! Agreements and the WMA Agreements is a wilful and conscious disregard of Plaintiff's rights under the federal Copyright Act.

25. As a direct and proximate result of Defendants' infringement of Plaintiff's copyright interests in the Title and the Program (i.e., the Works), Plaintiff has been damaged and continues to be damaged in an amount to be determined at trial. Plaintiff is also entitled, under 17 U.S.C. § 504(a), to statutory damages, to the extent they exceed Plaintiff's actual damages, for each of Defendants' acts of infringement.

26. In infringing Plaintiff's copyright interests, Defendants acted wilfully and maliciously, entitling Plaintiff to enhancement of any statutory damages, pursuant to 17 U.S.C. §504(c)(2), in an amount to be determined at trial.

27. As a direct and proximate result of Defendants' infringement of Plaintiff's copyright interest in the Works, Defendants have made and will make profits attributable to their infringement. The amount of these profits will be determined at the time of trial.

28. As a direct and proximate result of Defendants' wilful infringement of Plaintiff's copyright interests, Plaintiff has had to retain legal counsel, and it is entitled to recover its attorneys' fees from Defendants pursuant to 17 U.S.C § 505, as well as costs, including any expert fees that might be appropriately recoverable.

29. Plaintiff has been and will continue to be damaged as a direct and proximate result of Defendants' continuing acts of infringement and threatened infringement, including but not limited to, lost revenues and profits, damaged relations with existing and prospective business partner, and continuing loss of value of its copyright interests in the Works. The damages that Plaintiff has

suffered and continues to suffer from this infringement are irreparable.  Plaintiff has no adequate remedy at law, and such conduct will continue to cause irreparable harm unless restrained by this Court by the issuance of a preliminary injunction.

30.  Unless enjoined by this Court, Defendants' conduct and continued infringement of Plaintiff's copyright interests will cause further irreparable injury.  Plaintiff therefore requests that, after trial, this Court issue a permanent injunction, restraining and enjoining Defendants and their agents, employees, attorneys, representatives, and anyone acting at their direction or behalf from copying, reproducing, distributing, or displaying, without the express or implied consent of Plaintiff, the copyrightable expression in the Infringing Series.

31.  In an effort to prevent ongoing and future infringement of Plaintiff's copyright interests and the irreparable injury resulting therefrom, Plaintiff requests that this Court order Defendants to surrender all copies made in violation of Plaintiff's copyright interests, as well as any film negatives, tapes, or other articles by which such copies may be produces, and the destruction or reasonable disposition of all such items as part of its final judgment in this action.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT E! ENTERTAINMENT
## FOR BREACH OF CONTRACT

32.  Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 31 above, as if fully set forth herein.

33.  On or about December 10, 2003, Plaintiff, at the request of Donna Scavella (an employee of E! Entertainment) acting in accordance with E! Entertainment's knowledge and with authority given to her by E! Entertainment presented Plaintiff with a "SUBMISSION AGREEMENT" (attached as Exhibit 2) and requested that Plaintiff execute that agreement as a condition precedent to presenting the Works to E! Entertainment for consideration to develop and create a television series. Ms. Scavella had implied, actual and apparent authority to bind E! Entertainment to the agreement, represented same to Plaintiff and either counter-signed said

agreement and/or expressed her unequivocal intent to bind E! Entertainment (with their consent) to the agreement by accepting Plaintiff's submission of the Works and signing and verbally agreeing to accept Plaintiff's submission on behalf of E! Entertainment. In reliance thereupon, Plaintiff executed the agreement, which provided, in part (at Paragraph 4), that if E! Entertainment were to use or desire to use any of the protected components of the Works; then E! Entertainment would negotiate in good faith with Plaintiff for compensation for such use(s).

34. Defendant E! Entertainment breached the foregoing SUBMISSION AGREEMENT by using the Works (including the so-called "protected" components thereof) to make the Infringing Series and failing and refusing to notify Plaintiff, negotiate with Plaintiff, obtain Plaintiff's permission or consent and by further failing and refusing to compensate Plaintiff for such uses.

35. In addition to the foregoing, Plaintiff presented an agreement to Ms. Scavella in or about December 2003 entitled "RELEASE AGREEMENT" (see form of agreement in Exhibit 3 hereto). Ms. Scavella executed the agreement with E! Entertainment's knowledge and with authority given to her by E! Entertainment. Ms. Scavella had implied, actual and apparent authority to bind E! Entertainment to the agreement and represented same to Plaintiff. The main paragraph of that 1-page agreement specifically provided that E! Entertainment would not use the Works without entering into an agreement therefor with Plaintiff's company. In addition, the agreement provided that E! Entertainment would not present the Works to any third party without acknowledging to that third party that the Works were owned by Plaintiff.

36. Defendant E! Entertainment breached the foregoing RELEASE AGREEMENT by using the Works in connection with the Infringing Series and failing and refusing to notify Plaintiff, negotiate with Plaintiff, obtain Plaintiff's permission or consent and by further failing and refusing to compensate Plaintiff for such uses. Furthermore, E! Entertainment breached the RELEASE AGREEMENT by presenting the Works to various third parties without acknowledging to those third parties that the Works were owned by Plaintiff. This latter conduct was undertaken by E! Entertainment in an effort to falsely designate the origin of the Works (by action and by omission)

9

in furtherance of the infringement of the Works in creating, developing and exploiting the Infringing Series.

37. Defendant E! Entertainment also entered into a verbal agreement with Plaintiff in or about December 2003. In this regard, Ms. Scavella and Plaintiff orally agreed that E! Entertainment would not use the Works without Plaintiff's permission and entering into an agreement with Plaintiff for such rights. Ms. Scavella verbally agreed to this arrangement (which was not inconsistent with the RELEASE AGREEMENT and the SUBMISSION AGREEMENT) with E! Entertainment's knowledge and with authority given to her by E! Entertainment. Ms. Scavella had implied, actual and apparent authority to bind E! Entertainment to the agreement and represented same to Plaintiff. E! Entertainment, likewise, breached this agreement by using the Works in connection with the Infringing Series and failing and refusing to notify Plaintiff, negotiate with Plaintiff, obtain Plaintiff's permission or consent and by further failing and refusing to compensate Plaintiff for such uses.

38. As a direct, foreseeable, legal, actual and proximate result of the Defendants' acts and omissions alleged herein; Plaintiffs have suffered and continue to suffer substantial economic and non-economic damages in an amount to be proven at trial.

39. Plaintiff has been and will continue to be damaged as a direct and proximate result of Defendants' continuing acts of breach of contract, including but not limited to, lost revenues and profits, damaged relations with existing and prospective business partner, and continuing loss of value of its copyright interests in the Works. The damages that Plaintiff has suffered and continues to suffer from this infringement are irreparable. Plaintiff has no adequate remedy at law, and such conduct will continue to cause irreparable harm unless restrained by this Court by the issuance of a preliminary injunction.

40. Unless enjoined by this Court, Defendants' conduct and continued infringement of Plaintiff's copyright interests will cause further irreparable injury. Plaintiff therefore requests that, after trial, this Court issue a permanent injunction, restraining and enjoining Defendants and their agents, employees, attorneys, representatives, and anyone acting at their direction or behalf from

copying, reproducing, distributing, or displaying, without the express or implied consent of Plaintiff, the copyrightable expression in the Infringing Series.

41. In an effort to prevent ongoing and future breaches of the agreement and further infringement of Plaintiff's copyright interests and the irreparable injury resulting therefrom, Plaintiff requests that this Court order Defendants to surrender all copies made in violation of Plaintiff's copyright interests, as well as any film negatives, tapes, or other articles by which such copies may be produces, and the destruction or reasonable disposition of all such items as part of its final judgment in this action.

## THIRD CAUSE OF ACTION AGAINST
## DEFENDANT WILLIAM MORRIS ENDEAVOR ENTERTAINMENT
## FOR BREACH OF CONTRACT

42. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 41 above, as if fully set forth herein.

43. On or about May 27, 2004, Plaintiff presented an agreement to Melissa McLeod (an employee of WMA) entitled "RELEASE AGREEMENT" (see Exhibit 4 hereto). Ms. McLeod executed the agreement on behalf of WMA and with WMA's knowledge and with authority given to her by WMA. Ms. McLeod had implied, actual and apparent authority to bind WMA to the agreement and represented same to Plaintiff. The main paragraph of that 1-page agreement specifically provided that WMA would not use the Works without entering into an agreement therefor with Plaintiff's company. In addition, the agreement provided that WMA would not present the Works to any third party without acknowledging to that third party that the Works were owned by Plaintiff.

44. Defendant WMA breached the foregoing RELEASE AGREEMENT by using the Works in connection with the Infringing Series and failing and refusing to notify Plaintiff, negotiate with Plaintiff, obtain Plaintiff's permission or consent and by further failing and refusing to

compensate Plaintiff for such uses. Furthermore, WMA breached the RELEASE AGREEMENT by presenting the Works to various third parties without acknowledging to those third parties that the Works were owned by Plaintiff. This latter conduct was undertaken by WMA in an effort to falsely designate the origin of the Works (by action and by omission) in furtherance of the infringement of the Works in creating, developing and exploiting the Infringing Series.

45. As a direct, foreseeable, legal, actual and proximate result of the Defendants' acts and omissions alleged herein; Plaintiffs have suffered and continue to suffer substantial economic and non-economic damages in an amount to be proven at trial.

46. Plaintiff has been and will continue to be damaged as a direct and proximate result of Defendants' continuing acts of breach of contract, including but not limited to, lost revenues and profits, damaged relations with existing and prospective business partner, and continuing loss of value of its copyright interests in the Works. The damages that Plaintiff has suffered and continues to suffer from this infringement are irreparable. Plaintiff has no adequate remedy at law, and such conduct will continue to cause irreparable harm unless restrained by this Court by the issuance of a preliminary injunction.

47. Unless enjoined by this Court, Defendants' conduct and continued infringement of Plaintiff's copyright interests will cause further irreparable injury. Plaintiff therefore requests that, after trial, this Court issue a permanent injunction, restraining and enjoining Defendants and their agents, employees, attorneys, representatives, and anyone acting at their direction or behalf from copying, reproducing, distributing, or displaying, without the express or implied consent of Plaintiff, the copyrightable expression in the Infringing Series.

48. In an effort to prevent ongoing and future breaches of the agreement and further infringement of Plaintiff's copyright interests and the irreparable injury resulting therefrom, Plaintiff requests that this Court order Defendants to surrender all copies made in violation of Plaintiff's copyright interests, as well as any film negatives, tapes, or other articles by which such copies may be produces, and the destruction or reasonable disposition of all such items as part of its final judgment in this action.

## JURY DEMAND

Plaintiffs demand trial by jury to resolve the issues raised herein; with the exception of such issues as are retained by the Court to grant injunctive relief.

## PRAYER

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

A.     That the Court enter judgment in favor of Plaintiff and against Defendants;

B.     That the Court enter a declaratory judgment that Defendants have committed copyright infringement in connection with their development of the Infringing Series;

C.     That Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, be preliminarily and permanently restrained and enjoined from infringing Plaintiff's copyright interests;

D.     That Plaintiff recover compensatory damages for Defendants' wrongdoing in an amount to be established at trial, together with pre-judgment and post-judgment interest thereon at the maximum legal rate;

E.   That Plaintiff recover its proven damages or statutory damages elected in accordance with the Copyright Act, 17 U.S.C.$ 504 and 505 and other applicable law.

F.     That Plaintiff recover an award of punitive and other appropriate exemplary damages, disgorgement, restitution, pre-judgment and post-judgment interest as permitted by statute and/or contract;

G.     That Plaintiff recover attorneys' fees and the costs of suit herein; and

H.     Such other and further relief as this Court may deem just and proper.

DATED: January 23, 2013                           Respectfully Submitted

Michael S. Traylor
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

<u>Collective Title:</u>
# Reality Shows
## By
# Henry Haraway

<u>Sub Titles:</u>
" Video It Girl Competition"
"Opening Act"
"Child's Play"

| TITLE: | **CHILD'S PLAY** | |
| | *"The games are childish but the stakes are high!"* | |
| PRODUCTION CO: | LAMAD Productions | |
| CREADTED BY: | Henry Haraway | September 29, 2003 |
| FORMAT: | Reality Based Competition - 1 hour hosted | |

### The Concept

Capitalizing on America's fascination with competitive reality based shows like American Idol, Big Brother and Survivor, LAMAD Productions presents *"Child's Play"*.  In this competition based show, adults will go head to head playing exaggerating versions of the most popular childhood games such as musical chairs, hide and go seek and tug of war.  The object of the game is to win the games, survive elimination and be one of the two winners to share in the grand prize of one million dollars.  Stapled with bright colors, large toys and props, fun childhood games and adult strategies, this show is guaranteed to capture audiences of all ages.  *The games are childish but the stakes are high.*

### The Game Structure

The game will begin with 15 people. Prior to the first episode these fifteen people will spend two days confined together in order to get to know each other.  Once they're all well aquatinted, they will then be ready for *"Child's Play"*

#### Forming The Teams

There will be two competing teams, *Red Team* and *Blue Team*, consisting of five members per team and a reserve of alternate players waiting in the *Time Out Box*.  These teams will be determined by the first competition - a 100-yard dash.

**100 Yard Dash -** The contestants will be told that the prizes for the 100-yard dash are as follows...

1st place - $10,000
2nd place - $5,000
3rd place - $2,500

After the race the contestants will learn that in addition to these cash prizes, the 1st and 2nd place winners will become captains of the *Red* and *Blue* teams.  As captains they will alternate picking four players for their team from the remaining players.  The five that are not selected for competing teams will retreat to the *Time Out Box* with the 3rd place winner as captain.

| **Red Team** (competing) | **Blue Team** (competing) | **Time Out Box** (alternates) |
| 1st place as captain | 2nd Place as captain | 3rd place as captain |

The *Red* and *Blue* teams are the competing teams.  The players in the *Time Out Box* are waiting for their turn to play.

### The Power of The Captains

After each game the captain of the loosing team gets to tell one player *"Play Time is Over"*.  Once the captain has uttered those words, that player is sent home and replaced by a player from the *Time Out Box*. The captains of the *Red* and *Blue* teams can take suggestions from their team as to who they think should be eliminated but the ultimate decision as to whose *"Play Time is Over"* is theirs and theirs alone.

The captain of the *Time Out Box* has all of the decision power on their team.  After each elimination they will choose which player to put in the game leaving himself or herself as the last player to enter.

### Let The Games Begin

The *Red* and *Blue* teams will go head-to-head eliminating players and gaining players from the *Time Out Box* in the manner described above.  Once all of the players from the *Time Out Box* are in the game, the *Red* and *Blue* teams will continue to eliminate players until only four players remain.  The final four players will then play a series of games, two-on-two.  The winning team of two will take home the cash prize.

### The Fall of The Captains

If any team looses 3 games in a row, the team members can overthrow their captain by unanimous vote and appoint a new captain from within the team.  If this should happen the original captain must split the prize money from the 100-yard dash 50/50 with the new captain.

| TITLE: | Opening Act | |
|---|---|---|
| PRODUCTION CO: | LAMAD Productions | |
| CREADTED BY: | Henry Haraway | WGA Registration: 950940<br>September 12, 2003 |
| FORMAT: | Reality Based Competition – 1/2 hour | |

## The Concept

Capitalizing on America's fascination with competitive reality based shows like American Idol, Big Brother and Survivor, LAMAD Productions presents *"Opening Act"*. In this battle of the band type of competition local bands with dreams of big time recording contracts will battle it out for a chance to perform as the opening act for a major recording artist in their genre of music.

## The Competition

### Phase One… The Hunt for The Bands… Episodes 1-5

A Secret Agent (talent scout) will travel to 5 cities across the USA. In each city the cameras will follow the secret agent's every move as he/she visits the most popular clubs. Through word of mouth and the buzz around town, they will track down the hottest band from each city to perform as a competing band on *"Opening Act"*. At the end of each of these 5 episodes the secret agent will select the band they feel is the best competitor for the show, and grant them the coveted **Showcase Pass**.

### Phase Two… The Showcases… Episodes 6-10

The next five episodes will take a look at each of the five bands in a more intimate setting as they prepare for the big Showcase competition. The taped performances will take place in their respective hometowns at a popular nightclub on its best night. The cameras will follow as we see them do all it takes to pack the house and give the performance of a lifetime. America will experience the struggles involved in rehearsing, promoting and creating a fan base. Each of these episodes will end with the best outtakes from the band's performance.

### Phase Three… The Judging… Episode 11

The judges will be a major act that is in the same genre of music as the contestants. They will choose the 2 bands that will move on and go head-to-head in the Ultimate Battle of the bands. They will host a huge *"Opening Act"* viewing party for the public at a popular Hollywood location where the footage of the 5 contestants will be shown. Taking in the crowd's reaction, the judges will retreat to a private room to make their final decision as to which 2 bands will advance.

### Phase Four… The Battle and The Victory… Episode 12

The band will be given music on a CD. They will have 12 hours to write lyrics to the music and learn how to play the song. At the end of the 12 hours they will go head to head in 2 rounds with their new song and another song of their choice. They will be judged on how well they learn and perform the new song, the quality of their overall performance, their endurance through the process and their potential star power.

---

**Contact LAMAD Productions**
**323-632-9700**

*Video–* A leading music video director (i.e. Hype Williams, Paul Hunter or Little X) will use the remaining woman in scenes from a current video they're directing. The women will be judged on their scenes from the finished video.

*Audition –* We will send the women out on a Hollywood audition. The judges will take the casting directors feedback and judge according to the video footage of their auditions.

## The Judging

The panel of judges will consist of 2 regular judges that appear on every show and one guest judge who is an industry professional in the area of that show's competition. After each competition the judges will give their talent a rating of "*IT*" "*Almost IT*" or "*Nothing Like IT*". Any woman who receives a rating of "*Nothing Like IT*" from every judge will be eliminated and will not return for the next episode. The ladies must receive at least one "*IT*" rating or two "*Almost IT*" ratings to continue to the next round of competition.

## The Prize

In addition to the coveted title of the next "*IT Girl*", she will receive $100,000 cash, representation by a top Hollywood agent, and various sponsored gifts.

| | |
|---|---|
| **TITLE:** | The Video It Girl Competition<br>*"Sure they're beautiful, but do they have talent?"* |
| **PRODUCTION CO:** | LAMAD Productions |
| **CREADTED BY:** | Henry Haraway |
| **FORMAT:** | Reality Based Competition - 1 hour hosted |

WGA Registration #949363
September 4, 2003

### The Concept

Capitalizing on America's fascination with competitive reality based shows like American Idol, Big Brother and Survivor, LAMAD Productions presents the *Video It Girl Competition.* Beautiful women with successful careers in music videos will compete for the title of the next *"IT Girl"*. The contestants are all women who have had at least one principle roll in a music video. The cameras will follow these women as they are trained in all areas of the arts (singing, dancing, acting, poetry writing, and visual arts etc.). The woman who will earn the title of the next *"IT Girl"* is the woman who displays the most well rounded talent; the one who can demonstrate that they are more than just a pretty face – they're an entertainer.

### The Host

*Option One*: The host will be a sexy, well-known male entertainer such as Tyrese or Justin Timberlake. These men have popularity and sex appeal that will draw female viewers, while male viewers will identify with their male perspective as they lead these beautiful women through the levels of competition.

*Option Two:* A female host who embodies what being an *"IT Girl"* is all about. I.E. Carmen Electra.

### The Competition

Professionals from every area of the arts will be guests on the show to train the women for competition. In each episode the cameras will follow the entire process from training to competition.

#### Areas of Competition

*Dancing* – A dance instructor will help them select the style of dance they'd like to perform and help them choreograph their own routine.

*Singing* – A vocal coach will help them select a song and rehearse for competition

*Acting* – All of the women will participate in the same 2 scenes opposite popular male actors (i.e. Omar Epps and Mathew McConaughey). They will perform one dramatic scene and one comedy. An acting coach will work with each woman on preparing for the scenes.

*Poetry* – A trained and popular writer will teach the women about poetic expression. The women will randomly draw subjects from a batch of predetermined subjects. Each woman will write a poem on their randomly selected subject and using what they've learned from the acting competition the women will memorize and perform their poems.

*Visual Arts* – The women will choose between painting and sculpting and they will work with professionals to create a piece that is a perfect expression of themselves. The judges will judge the art work without knowing which piece belongs to which woman.

*Humility* – The ladies will be told to dress their best because they've been invited to a celebrity-packed, Hollywood party. A limo will pick them up and upon arrival they will be told that they are not there to party but they will work as hired help. As the cameras follow as they work as coat checkers, waitresses and bar maids. They can not tell anyone that they are a part of the "IT Girl Competition" or they will be immediately disqualified. The judges will rate their attitude and humility.

Continued...

---

**Contact LAMAD Productions**
**323-632-9700**

Copyright Office fees are subject to change.
For current fees, check the Copyright Office
website at www.copyright.gov, write the Copy-
right Office, or call (202) 707-3000.

**SHORT FORM TX**
For a Nondramatic Literary Work

UNITED STATES COPYRIGHT OFFICE

Registration Number

_____ TX _____ TXU _____
Effective Date of Registration

Application Received

Examined By

Deposit Received
One                    Two

Correspondence
□

Fee Received

Copy   10-9-03

TYPE OR PRINT IN BLACK INK. DO NOT WRITE ABOVE THIS LINE.

**1** Title of This Work:

Realty Shaws By Henry Haraway

Alternative title or title of
larger work in which this
work was published:

**2** Name and Address of
Author and Owner of the
Copyright:

Henry Haraway
4431 Don Ricardo Drive Apt # 16
Los Angeles  CA  90008
Phone ( 323 ) 632-9700        Fax (        )
Email  Lamad @ SBCGlobal. net

Nationality or domicile:
Phone, fax, and email:

**3** Year of Creation:  2003

**4** If work has been published,
Date and Nation of
Publication:

a. Date _____  (Month, day, and
            Month            Day            Year      year all required)
b. Nation

**5** Type of Authorship
in This Work:

☑ Text (includes fiction, nonfiction, poetry, computer programs, etc.)
☐ Illustrations
☐ Photographs
☐ Compilation of terms or data

Check all that this author created.

**6** Signature:

Registration cannot be
completed without a
signature.

I certify that the statements made by me in this application are correct to the best of my knowledge.* Check one:
☐ Author  ☐ Authorized agent

X _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**7** Name and Address of
Person to Contact for
Rights and Permissions:

Phone, fax, and email:

☑ Check here if same as #2 above.

Phone (        )                Fax (        )
Email

**8** Certificate
will be
mailed in
window
envelope to
this address:

Name ▼ Henry Haraway
Number/Street/Apt ▼ 4431 Don Ricardo Dr. Apt #16
City/State/ZIP ▼ Los Angeles  CA 90008

**9** Deposit Account #_____
Name _____

Complete this space only
if you currently hold a
Deposit Account in
the Copyright
Office.

DO NOT WRITE HERE        Page 1 of _____ pages

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with
the application, shall be fined not more than $2,500.

Rev: June 2002—20,000   Web Rev: June 2002   ♻ Printed on recycled paper

U.S. Government Printing Office: 2000-461-113/20,021

Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**SHORT FORM TX**
For a Nondramatic Literary Work

UNITED STATES COPYRIGHT OFFICE

Registration N ____
**TXu 1 – 131 – 025**

Effective Date of Registration
_October 17, 2003_

Application Received
OCT 17 2003

Dep OCT 17 2003
One _____
Fee _____

Examined By ____ KV ____

Correspondence ☐

TYPE OR PRINT IN BLACK INK. DO NOT WRITE ABOVE THIS LINE

| | | |
|---|---|---|
| **Title of This Work** <br><br> Alternative title or title of larger work in which this work was published | **1** | Realty Shows By Henry Haraway |
| **Name and Address of Author and Owner of the Copyright** <br><br> Nationality or domicile <br> Phone fax and email | **2** | Henry Haraway <br> 4431 Don Ricardo Drive Apt #16 <br> Los Angeles CA 90008 <br> Phone (323) 632-9700   Fax ( ) <br> Email Lamad @ SBCGlobal net |
| **Year of Creation** | **3** | 2003 |
| **If work has been published, Date and Nation of Publication** | **4** | a Date ____ Month ____ Day ____ Year ____ (Month day and year all required) <br> b Nation |
| **Type of Authorship in This Work** <br><br> Check all that this author created | **5** | ☑ Text (includes fiction, nonfiction, poetry, computer programs, etc ) <br> ☐ Illustrations <br> ☐ Photographs <br> ☐ Compilation of terms or data |
| **Signature** <br><br> Registration cannot be completed without a signature | **6** | I certify that the statements made by me in this application are correct to the best of my knowledge * Check one <br> ☑ Author  ☐ Authorized agent <br> x *Henry Haraway* |
| **Name and Address of Person to Contact for Rights and Permissions** <br> Phone fax and email | **7** | ☑ Check here if same as #2 above <br><br> Phone ( )   Fax ( ) <br> Email |

OPTIONAL

| | | |
|---|---|---|
| **8** <br> Certificate will be mailed in window envelope to this address | Name ▼ <br> Henry Haraway <br> Number/Street/Apt ▼ <br> 4431 Don Ricardo Dr Apt #16 <br> City/State/Zip ▼ <br> Los Angeles CA 90008 | **9** Deposit Account # <br> Name _____ <br> _____ <br> _____ <br> DO NOT WRITE HERE   Page 1 of ___ page |

17 U S C § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409 or in any written statement filed in connection with the application shall be fined not more than $2 500

Rev June 2003—20 000  Web Rev June 2003  ⊛ Printed on recycled paper           U S Government Printing Office 2000-461 113/20 021

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

DATED: _12 - 10_ , 20_03_

E! Networks
5750 Wilshire Boulevard
Los Angeles, California 90036

Gentlemen and Ladies:

I am submitting to you as part of this Submission Agreement ("Agreement") the following written or otherwise recorded material (the "Material"):

The Material is submitted on the following terms, conditions and understandings:

1.      I understand and acknowledge that because of your position in the entertainment industry you receive numerous submissions of television program and movie ideas, formats, stories, suggestions, and the like.  I further understand and acknowledge that you would refuse to accept, consider or otherwise evaluate the Material in the absence of my acceptance of each and every provision of this Agreement.  I further understand and acknowledge that no confidential or fiduciary relationship now exists between us, and that no such relationship is established by reason of this Agreement or by reason of my submission of the Material to you.

2.      I warrant that I am either the author and owner of all rights to the Material or the duly authorized agent of the author and owner of all rights to the Material, and I have full power and authority to submit the Material to you on the terms and conditions hereof, each and all of which shall be binding not only on me but on any and all persons and entities for whom I am acting.  I acknowledge that this is a non-commissioned submission and that you did not suggest or request that the Material be written, created, or submitted.

3.      Notwithstanding anything else in this Agreement, you may use, without any obligation whatsoever to me and without payment whatsoever to me, the Material, or any part thereof or ideas therein, to the extent that such Material, part, or idea (a) is similar to or contains significant elements encompassed in a concept under consideration or in development by you at the time of my submission, or (b) is not unique, novel, original and concrete as to be entitled to intellectual property protection under the law, or (c) has been made public by anyone at the time of my submission or otherwise is in the public domain, or (d) would be freely usable by a third person if it had not been accepted as a submission or the subject of any agreement, or (e) is not protected by Federal copyright law, or (f) if other similar or identical projects are independently created by your employees or associates or those of third parties.  Any of the Material that, in accordance with the preceding sentence, you are entitled to use without obligation to me is

hereinafter referred to as "Unprotected Material". If all or any part of the Material does not fall in the category of unprotected material, such part, if any, in hereinafter referred to as "Protected Material".

4.     You agree that if you use or wish to use any Protected Material in a work, distributed, exhibited or released to the public (provided the Protected Material used has not been obtained from, or independently created by, another source), you and I will negotiate in good faith concerning the appropriate payment for such use or contemplated use. If, after you have used Protected Material and despite our good faith negotiations we are unable to agree upon an amount, either party may then submit the matter to arbitration in accordance with and subject to the terms of Paragraph 10, below, which shall be my sole and exclusive remedy for any breach of this Agreement or improper use of the Material by you.

5.     I understand and acknowledge that you and your employees have access to, may create, or have created, television material and ideas which may be similar or identical to the Material in theme, idea, plot, format or other respects. I agree that I will not be entitled to any compensation because of the use of any such similar or identical material that may have been independently created by you or any of your employees or may have come to you or such employee from any other independent source, whether before or after the date of this Agreement. I agree and acknowledge that, in any dispute arising from alleged use of the Material, or any part thereof or ideas therein, I will bear the burden of proving that you used the Material (and that you did not independently create the alleged similar literary materials or ideas or derive them from an independent source). I agree and acknowledge that no presumption of inference of copying or use shall arise, or be asserted, by virtue of (a) any similarity between your work and the Material or (b) the fact that I submitted the Material to you or that you had access thereto.

6.     I agree and acknowledge that no contract or obligation of any kind, other than those arising pursuant to the express terms of the Agreement, is assumed by you or may be implied against you by reason of your review of the Material and/or any discussions or negotiations we may have. Specifically, it is understood that neither my submission of the Material pursuant to this Agreement, nor your review (or use of Unprotected Material) thereof, constitutes or creates an implied-in-fact or implied-in-law contract, even if there exists an industry custom or practice to the contrary.

7.     I have retained at least at least one (1) copy of the Material, and I hereby release you of and from any and all liability for loss of, or damage to, the copy or copies of the Material submitted to you hereunder.

8.     I understand that whenever the word "you" or "your" is used herein, it refers to (a) E! Entertainment Television, Inc. (including "style."), (b) any company affiliated with E! Entertainment Television, Inc. by way of common stock ownership or otherwise, (c) parents, divisions, units and subsidiaries of E! Entertainment Television, Inc., (d) divisions, units and subsidiaries of such affiliated companies, (e) any firm, person or corporation to whom E! Entertainment Television, Inc. is leasing production facilities,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

3232965399
p.3

Sep 10 12 09:29a        My Mailbox Inc.

Jun-08-04    03:08pm    From-MUSIC                   3105504288         T-802   P.002/002   F-707

Jan-08-04    02:27pm    From-MUSIC                   3105504289         T-788   P.002/002   F-701

# RELEASE AGREEMENT
## LAMAD Productions

This serves as a release agreement between Henry Haraway and _____
By signing this agreement, you acknowledge that you have received information (written and/or verbal) regarding the following reality show concepts...

*1. Child's Play*
*2. Video It Girl Competition*
*3. Opening Act*

Current titles subject to change.

You acknowledge that the Material was created and written by Henry Haraway for LAMAD Productions without any suggestion or request from you. You agree that you will not use the Material or any part thereof unless you enter into an agreement with LAMAD Productions granting you the right to use the Material. You also agree that you will not present this material to any third party without acknowledging that the sole ownership and rights to the material belongs to Henry Haraway for LAMAD Productions.

I acknowledge that I have read this agreement, I understand the language in it and I agree to the above mentioned terms. I acknowledge that I have received a written attachment that details show concepts.

6-8-04
Date

Revised 6/8/04

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

## RELEASE AGREEMENT
### *"Opening Act"*

This serves as a release agreement between Henry Haraway and _____.
By signing this agreement you acknowledge that you have received information (written or verbal) regarding a
reality show concept currently titled *Opening Act* (title subject to change).

You acknowledge that the Material was created and written by Henry Haraway for LAMAD Productions without
any suggestion or request from you.  You agree that you will not use the Material or any part thereof unless you
enter into an agreement with LAMAD Productions granting you the right to use the Material.  You also agree that
you will not present this material to any third party without acknowledging that the sole ownership and rights to the
material belongs to Henry Haraway for LAMAD Productions.

I acknowledged that I have read this agreement, I understand the language in it and I agree to the above mentioned
terms. I acknowledge that I have received a written attachment that details the show concept.

_Melissa Mcleod_
**Print**


_____
**Company (If applicable)**

_____     5/27/04
**Signature**                                              **Date**


Revised 5/26/04

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>Henry Haraway | DEFENDANTS<br>E! Entertainment Television, LLC., E! Entertainment Int'l Holdings, Inc., NBC Universal Media, LLC., NBCUniversal Television Group, Nigel Lythgoe Productions, William Morris Endeavor Entertainment, LLC and Does 1-20, |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Michael S. Traylor (SBN 136814)   (310) 567-2789 cell<br>9018 Balboa Blvd., Suite 352   (310) 401-6610 ofc<br>Northridge, CA. 91325   (661) 296-9965 fax | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No   ☑ MONEY DEMANDED IN COMPLAINT: $ 3,000,000.00 +

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Copyright Infringement (17 USC 101 et seq) for a television series entitled Opening Act.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☑ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | IMMIGRATION | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☑ 462 Naturalization Application | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | FEDERAL TAX SUITS |
| | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

## CV13-00628

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| E! Entertainment Television and E! Entertainment Int'l: L.A. County<br>Universal Media and NBCU Television: L.A. County<br>Nigel Lythgoe Prods. and  William Morris: L.A. County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Copyright Infringement: L.A. County<br>Breach of Contract Claims: L.A. County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date  *1-28-13*

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |